UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

XAVIOR CAINE POSEY                                      PLAINTIFF

v.                                                CIVIL ACTION NO. 1:17-CV-P143-GNS

BENNIE R. KINNEY et al.                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Xavior Caine Posey, a prisoner presently incarcerated in the Meade County Detention Center (MCDC), filed this *pro se* complaint pursuant to 42 U.S.C. § 1983 while he was incarcerated at the Logan County Detention Center (LCDC). This matter is before the Court for initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will allow the following claims to proceed: (1) The Eighth Amendment claims for deliberate indifference to Plaintiff's serious medical needs against Defendants Lyons, Harvey, and Kinney in their individual capacities; and (2) The Eighth Amendment excessive-force claims against Defendants Dauley, Lyons, and Harvey in their individual capacities. All other claims and Defendant Gregory will be dismissed from this action.

## I. SUMMARY OF CLAIMS

Plaintiff identifies the following five Defendants in this action: (1) Bennie R. Kinney, the Chief Jailer at the LCDC; (2) Jarrod Lyons, a "Sheriff" with the Logan County Sheriff's Department (LCSD); (3) Kyle Harvey, a "Sheriff" with the LCSD; (4) Charles Dauley, a detective with the LCSD; and (5) Phil Gregory, the Jailer at the LCDC. Plaintiff sues each Defendant in his official and individual capacities and seeks punitive damages.

Plaintiff alleges that on May 18, 2017, he was in district court "looking at my girlfriend (smiled) and told her I loved her. After a few minutes went by, I looked back over towards my girlfriend." According to Plaintiff, at that time, Defendant Dauley looked at Plaintiff and tried to say something to Plaintiff. When Plaintiff was unable to hear him, Plaintiff states that Defendant Dauley "came to me and told me 'to stop making faces at the people in the court room.'" Plaintiff states he responded, "Alright." Thereafter, according to Plaintiff, Defendant Dauley "jerked" Plaintiff out of his chair. Plaintiff states that he "was in shakles" and "it hurt very bad." Plaintiff represents that he informed Defendant Dauley to "not put his hands on me." Plaintiff asserts that Defendant Dauley "started to throw [him] around." According to Plaintiff, "after a few seconds [he] was hit" by two officers, Defendants Lyons and Harvey. Plaintiff states that these officers told him to get to the ground. According to Plaintiff, he attempted "to lay down but was pushed back by one of the Police men." Plaintiff continues, "I then hit my head on the wooden table where the attornys sit. The three Policemen were on top of me kneeing and hitting me in my face telling me to 'stop resisting.' The three officers put me in a holding cell."

Plaintiff states that he was thereafter transferred back to the LCDC where he told Defendant Kinney that he had "just been assaulted by three officers and I am hurt and would like to call my attorney and press charges and see the nurse for my cuts and bruses." Plaintiff states that Defendant Kinney commented that Plaintiff "haven't seen assult." Plaintiff states that he was then put in a "restrain chair after [he] asked for pitures of [his] open wounds and bruses."

Plaintiff states that he told the "deputys that I was having trouble breathing they ignored me. After a few hours I was taking out of the chair and put into Cell 171 with no water." Plaintiff states that he asked multiple deputies for water, but they ignored him. According to Plaintiff, the following day he was moved to another cell, Cell 139, which also had no water.

2

Plaintiff states that he asked for water, but none was ever brought to him. According to Plaintiff, on May 20, 2017, he got water.

Plaintiff states that he asked multiple deputies why he was in isolation and how long he would be in isolation, but no one gave him answers. According to Plaintiff, his family called LCDC and asked for pictures of his "cuts and wounds. The jail has still not took pictures." Further, Plaintiff states that he asked "the deputys to see the nurse they ignored me."

## II. **STANDARD OF REVIEW**

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)

(citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. <u>ANALYSIS</u>

#### A. Official-Capacity Claims

Plaintiff asserts claims against Defendants in their official capacities. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). Suing Defendants in their official capacities is the equivalent of suing their employer, Logan County. *See Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) (stating that civil-rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (advising that suing the police chief in his official capacity is the equivalent of suing the county); *Smallwood v. Jefferson Cty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (concluding that a suit against the Jefferson County Government, the Jefferson

County Fiscal Court, and the Jefferson County Judge Executive is actually a suit against Jefferson County itself).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will first address the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violation.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 691; *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) ("A municipality may be held liable under § 1983 if the municipality itself caused the constitutional deprivation. However, a municipality is not liable under § 1983 for an injury inflicted solely by its employees or agents; the doctrine of respondeat superior is inapplicable.") (citations omitted)); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994) ("Municipal liability for the actions of employees may not be based on a theory of *respondeat superior*."). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 694; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, "a plaintiff must 'identify the policy,

connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case, Plaintiff has not alleged that a municipal policy or custom caused his alleged harm. As nothing in the complaint demonstrates any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by Logan County, the complaint fails to establish a basis of liability against the municipality, and it fails to state a cognizable § 1983 claim.

Accordingly, the official-capacity claims will be dismissed for failure to state a claim upon which relief may be granted.

### B. Individual-Capacity Claims

#### 1. Claims Against Defendant Gregory

Plaintiff names Phil Gregory, the Jailer at LCDC, as a Defendant in this action. However, Plaintiff makes no allegations against him in the complaint. "It is axiomatic that a complaint under 42 U.S.C. § 1983 must show a causal connection between the named defendants and the alleged constitutional deprivation; the doctrine of *respondeat superior* has no application thereunder." *Cox v. Barksdale*, No. 86-5553, 1986 WL 18435, at *1 (6th Cir. Nov. 13, 1986) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982)). "Where a complaint alleges no specific act or conduct on the

6

part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *see also LeMasters v. Fabian*, No. 09-702 DSD/AJB, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009) ("To state an actionable civil rights claim against a government official or entity, a complaint must include specific factual allegations showing how that particular party's own *personal* acts or omissions directly caused a violation of the plaintiff's constitutional rights.").

Having failed to allege any conduct on the part of Defendant Gregory that violates Plaintiff's rights, the individual-capacity claims against him will be dismissed. Further, there being no remaining claims against him, Defendant Gregory will be dismissed from this action for failure to state a claim upon which relief may be granted.

### 2. Conditions-of-Confinement Claim

"Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). However, as former Chief Justice Rehnquist remarked, "[i]n short, nobody promised [inmates] a rose garden; and I know of nothing in the

7

Eighth Amendment which requires that they be housed in a manner most pleasing to them . . . ." *Atiyeh v. Capps*, 449 U.S. 1312, 1315-16 (1981).

Plaintiff states that from May 18, 2017, until May 20, 2017, he was housed in a cell with no water. Plaintiff does not allege that he was denied meals or fluids with meals; it appears that his claim involves the lack of running water in the cell. However, temporary placement in a cell without running water does not violate the Eighth Amendment. *See Spencer v. Wilson*, No. 6:11-00128-KSR, 2012 WL 2069658, at *3 (E.D. Ky. June 8, 2012) (finding that the plaintiff's placement in a cell without running water for several days did not rise to the level of an Eighth Amendment violation) ; *Diaz v. Cumberland Cty. Jail*, No. 10-3932 (JBS), 2010 WL 3825704, at *4 (D.N.J. Sept. 23, 2010) (finding that the plaintiff's placement in a cell without running water for two days did not amount to "a deprivation of constitutional magnitude"); *Gibert v. Anderson Cty. Sheriff's Office*, No. 0:06-1853-DCN-BM, 2007 WL 328840, at *8 (D.S.C. Feb. 5, 2007) (collecting cases); *James v. Monroe Cty. Jail*, No. 04-CV-0524E(SC), 2005 WL 2030730, at *3 (W.D.N.Y. Aug. 23, 2005) ("Lack of access to running water, by itself, does not constitute the denial of the minimal civilized measure of life's necessities.").

Having failed to allege a constitutional violation as to the lack of water in the cell, this claim will be dismissed for failure to state a claim upon which relief may be granted.

### 3. Claim Regarding Placement in Isolation

Plaintiff states that after he returned to LCDC after being in court, he was placed in a restraint chair and then placed in an isolation cell. He states that he asked "multiple deputys" why he was in isolation and how long he would be there, yet no one gave him any answers. The Court construes this claim as alleging that Defendants violated his right to due process by placing him in the isolation cell with no water.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court significantly restricted prisoners' § 1983 claims for relief based on issues concerning due process. The Court made a marked departure from its earlier decisions concerning recognized liberty interests, and instead limited due process liberty interests created by prison regulations "to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484 (citations omitted). Noting that punishment of incarcerated prisoners is aimed at effectuating prison management and prisoner rehabilitative goals, the Court found that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. The *Sandin* Court found no liberty interest in the inmate's 30-day placement in disciplinary segregation.

Thereafter, in *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court found that Ohio prisoners possessed a liberty interest in avoiding assignment to Ohio State Penitentiary (OSP), the state's only Supermax facility,[1] as the totality of the conditions at OSP "imposes an atypical and significant hardship under any plausible baseline." *Id.* at 223. The Court reasoned,

> For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. *Austin I*, 189 F. Supp. 2d, at 728. While any of these conditions standing alone might not be

---

[1]"Supermax facilities are maximum-security prisons with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population." *Wilkinson v. Austin*, 545 U.S. at 213.

9

> sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP. *Sandin*, *supra*, at 483, 115 S. Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. at 223-24. Thus, "[i]n deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both *Sandin* and *Austin* considered the nature of the more-restrictive confinement *and* its duration in relation to prison norms and to the terms of the individual's sentence." *Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008).

In the present case, the only adverse condition about which Plaintiff complains while in isolation is the lack of water in the cell from May 18, 2017, to May 20, 2017. Plaintiff does not describe any other ways in which his confinement to isolation presented more restrictive or atypical hardships upon him. Further, Plaintiff does not allege that his placement in isolation impacted parole or other sentence-related decisions. Plaintiff does not state how long he was in isolation. He filed the present complaint on August 4, 2017. Although unclear as to how long Plaintiff was in isolation, even if Plaintiff were still in isolation at the time he filed the complaint, some two and a half months, he fails to state how this confinement was an atypical and significant hardship. Thus, Plaintiff fails to state a due process claim. *See Spencer v. Wilson*, No. 6:11-00128-KSF, 2012 WL 2069658, at *2 (E.D. Ky. June 8, 2012) (holding that "[r]egardless of whether [plaintiff] was placed in administrative or disciplinary segregation, mere confinement in segregation does not constitute an atypical and significant hardship which violates either the Due Process Clause of the Fifth Amendment of the United States Constitution, or the Eighth Amendment of the United States Constitution"); *Minnifield v. Chandler*, No. 3:07CV-P207-S, 2007 WL 4602694, at *4 (W.D. Ky. Dec. 7, 2007) (finding placement in segregation for six months with recreation time for 5 days a week for one hour and ten-minute

showers three days a week was not an atypical and significant hardship violative of procedural due process protections).

Accordingly, the claim regarding Plaintiff's placement in isolation will be dismissed for failure to state a claim upon which relief may be granted.

### 4. Medical-Treatment Claims

Plaintiff alleges that after being returned to LCDC after the alleged use of excessive force against him in the courtroom, he asked Defendant Kinney and "the deputys to see the nurse they ignored me." Plaintiff states that he had open wounds, bruises, and was having trouble breathing.

Upon consideration, the Court will allow Eighth Amendment claims for deliberate indifference to Plaintiff's serious medical needs to proceed against Defendants Kinney, Lyons, and Harvey in their individual capacities.

### 5. Excessive-Force Claims

The Court construes Plaintiff's complaint as alleging Eighth Amendment claims against Defendants Dauley, Lyons, and Harvey for the use of excessive force. Upon consideration, the Court will allow Eighth Amendment excessive-force claims to proceed against Defendants Dauley, Lyons, and Harvey in their individual capacities.

### IV. **ORDER**

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

(1) The official-capacity claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(2) The Eighth Amendment conditions-of-confinement claim is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(3) The Due Process claim regarding Plaintiff's placement in isolation is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and

(4) That Defendant Gregory and the claims against him are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The **Clerk of Court** is **DIRECTED** to terminate Defendant Gregory as a Defendant from the docket of this action.

**IT IS FURTHER ORDERED** as follows:

(1) The Eighth Amendment claims for deliberate indifference to Plaintiff's serious medical needs will proceed against Defendants Lyons, Harvey, and Kinney in their individual capacities; and

(2) The Eighth Amendment excessive-force claims will proceed against Defendants Dauley, Lyons, and Harvey in their individual capacities.

The Court passes no judgment on the merits or ultimate outcome of this case. The Court will enter a separate Order Directing Service and Scheduling Order to govern the development of the proceeding claims.

Date: November 14, 2017

**Greg N. Stivers, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
     Defendants
     Logan County Attorney
4416.003